IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BRANDON E. GRAY, )
 )
    Plaintiff, )
 )
vs. ) Case No. CIV-13-1364-D
 )
VENABLE'S WELDING AND )
ROUSTABOUT, INC., )
 )
    Defendant. )

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 35], filed pursuant to Fed. R. Civ. P. 56. Defendant seeks a judgment as a matter of law on all remaining claims.[1] Plaintiff has responded in opposition to the Motion, and Defendant has filed a reply brief in further support of it. The reply brief is accompanied by additional materials that were not previously submitted. Because "Rule 56(c) requires the nonmoving party to be given notice and a reasonable opportunity to respond to the movant's summary judgment materials," *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998), the Court declines to consider any "new material raised for the first time in the movant's reply." *See Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005).

**Factual Background**

Plaintiff Brandon E. Gray, an African American, is an experienced welder's helper who was ostensibly offered a job with Defendant Venable's Welding and Roustabout, Inc.

---

[1] By Order of March 3, 2014 [Doc. No. 8], the Court granted Defendant's motion to dismiss a claim asserted under Okla. Stat. tit. 40, §§ 167 and 170.

in August 2011 for an available position on a new pipeline project that was being staffed in Alva, Oklahoma. Plaintiff and his cousin, Frederick Gray (also a welder's helper), were offered jobs by Ed Foreman, a welding boss for Defendant who was authorized to hire employees for the Alva project. When Plaintiff and his cousin arrived in Oklahoma from their homes in Mississippi, however, Defendant's field superintendent with higher authority, Roger Smith, twice refused Mr. Foreman's requests to hire them. Defendant says the refusal was due to the lack of a current need for welder's helpers on the Alva project when they arrived. Mr. Foreman says it was because he informed Mr. Smith that the Grays were black and Mr. Smith's refusal was motivated by racial discrimination.

Plaintiff filed suit in state court seeking relief under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), for denial of employment based on race, as well as a claim based on an Oklahoma labor statute. Defendant timely removed the case to federal court and obtained a dismissal of the state law claim. *See supra* note 1. Defendant now seeks summary judgment on Plaintiff's race discrimination claims.

**Standard of Decision**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party.

*Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### Statement of Undisputed Facts[2]

Defendant is headquartered in Dumas, Texas, and does business as Venable's Construction. It engages in construction related to the oil and gas industry, including new

---

[2] This statement includes material facts presented by Defendant that are properly supported and not opposed in the manner required by Rule 56(c), as well as additional facts presented by Plaintiff that are properly supported. All facts are stated in the light most favorable to Plaintiff.

pipeline construction. Defendant's contracts to build pipelines involve a significant amount of welding work, and require Defendant to employ welders and welder's helpers. However, every gas company that contracts for pipeline construction has its own third-party inspector who tests welders before they are permitted to perform welding work on the pipeline; if a welder fails the inspector's test, he or she cannot work on that particular pipeline project.

The welding trade typically has a significant amount of turnover and is very fluid. Welders and welder's helpers often change jobs and switch employment from one company to another without giving notice. A welder often has his or her own helper, and they travel together from job to job and employer to employer. Many welders will only take a job on the condition that their own helpers are also hired with them. Due to the dangerous nature of welding, welders want to work with someone they can trust.

Ed Foreman was hired by Defendant as a welder in February 2011. His dedicated welder's helper was Jimmy Speake, and both were hired the same day. Mr. Foreman, Mr. Speake, and a welding boss for Defendant, Keith Jennings, all were working on a job based in Calumet, Oklahoma. In mid-summer 2011, however, Defendant was awarded another contract to construct a pipeline for Atlas Pipeline Company, and this job was based in Alva, Oklahoma, approximately 100 miles away from Calumet. Defendant's field superintendent, or highest person in command, for the Alva project was Roger Smith. On August 12, 2011, Mr. Foreman was promoted to the position of welding boss or foreman for the Alva project, and he and Mr. Speake transferred to that job. Mr. Jennings stayed in Calumet.

In his new position, Mr. Foreman had the authority to hire and fire welders and welder's helpers for the Alva project, although he still took direction from Mr. Jennings and Mr. Smith. Mr. Foreman has testified that at least 15 welders were needed for the Alva project and that Mr. Jennings initially told him seven welders from the Calumet project would be sent to Alva. However, when testing began for the Alva project on August 15, 2011, Mr. Jennings could not spare seven welders and Mr. Foreman had to add seven more welders to his testing list at the last minute.

Atlas Pipeline Company utilized a welding inspector named H.A. Banta who gave "about the toughest test in the state of Oklahoma." *See* Foreman Dep. [Doc. No. 35-3], 22:5-8; *see also* Speake Dep. [Doc. No. 35-6], 22:2-3 ("probably one of the toughest welding tests in the industry"). Defendant found it very difficult to find welders who could pass the test administered by Mr. Banta, and some welders whom Mr. Foreman planned to hire for the Alva project failed their tests. Only two welders passed the test on August 15 and performed work on the Alva project, Mr. Foreman and Lester Hensley.[3] Six other welders passed the test on August 16, 2011, bringing the total number of welders on the Alva project to eight during the relevant time period.[4]

Plaintiff Brandon Gray is an African American, a resident of Mississippi, and a welder's helper. He had met Mr. Foreman on a previous job with a different employer before

---

[3] Mr. Jennings also passed the test but he remained in Calumet. Qualification records are ambiguous as to whether two other welders passed the test on August 15, but it is undisputed that neither of these individuals ever worked on the Alva project.

[4] No new welders for the project passed the test until August 29, 2011, after the events giving rise to this lawsuit. Another welder worked on the project for one day without testing (August 20, 2011), but he had his own helper. *See* Def.'s Mot. Summ. J. [Doc. No. 35], ¶¶ 15, 23.

2011.  In early August 2011, Plaintiff and Mr. Foreman had a telephone conversation in which Mr. Foreman said he had jobs for Plaintiff and his cousin, Frederick Gray, as welder's helpers if they came to Oklahoma.  Plaintiff's only information about a need for welder's helpers in Oklahoma came from Mr. Foreman.

There is conflicting testimony concerning when Plaintiff and his cousin (collectively, "the Grays") arrived in Oklahoma.  During his deposition, Plaintiff could not recall exact dates, but he testified that they arrived "around" August 8 or August 13.  *See* B. Gray Dep. [Doc. No. 35-5], 62:5-8; 67:13-20.  Plaintiff also testified that he spoke to Mr. Foreman when they arrived, and Mr. Foreman advised them to go to a hotel in Hinton, Oklahoma, and wait for a call the next morning for instructions on where to report for work.  According to Plaintiff, Mr. Foreman told them the next morning that there was an unspecified "issue" he needed to resolve and they should stay at the hotel that day.  *Id*. 73:8-19; 73:28-74:3.  Later that day, Mr. Foreman called to say he was coming to the hotel, and when he arrived, according to Plaintiff, Mr. Foreman said:  "I'm having trouble getting you all hired because of the color of your all's skin."  *Id*. 77:12-24.  Plaintiff had not met any other employees of Defendant at that time, but as Plaintiff remembered it, Mr. Foreman mentioned Keith Jennings as the person who opposed their hiring.  Plaintiff did not recall the name Roger Smith.  Plaintiff testified that Mr. Foreman told the Grays to stay in Hinton a couple more days and he paid for their hotel room for two nights and invited them to his house for dinner the second night.  Plaintiff recalled to "the best of [his] knowledge" that August 13 was their last night in Oklahoma and they left the next day for Mississippi.  *Id*. 86:18-23; 97:13-20.

Mr. Foreman generally described the same series of events during his deposition, but his testimony suggests a later date for Plaintiff's arrival in Oklahoma. Mr. Foreman testified that the day the Grays arrived, he asked Mr. Smith whether the "safety man" would be in the next day because he had "two black boys coming up from Mississippi, and [he] needed them orientated." *See* Foreman Dep. [Doc. No. 35-3], 51:2-8.[5] Mr. Smith responded: "I'm not hiring them." *Id*. 51:9-11. Mr. Foreman then called the Grays and told them to wait "a couple of days . . . because [he] had a problem." *Id*. 45:10-13. Mr. Foreman testified that two days later, he again asked to schedule the Grays for orientation and Mr. Smith said, "I told you I wasn't hiring them." *Id*. 61:15-19. Mr. Smith gave no explanation for his refusal to hire the Grays. Mr. Foreman testified, however, that he discussed Mr. Smith's response separately with Mr. Speake and Mr. Jennings, and all agreed that race must be the reason because Mr. Smith was only refusing orientation to the Grays and because his position made no sense otherwise. *Id.* 62:22-63:3; 64:6-24. As a result, Mr. Foreman told Mr. Jennings he was quitting "[b]ecause that's straight up illegal" and he "realized then [he] had to remove [himself] from it." *Id*. 65:1-14. Defendant's time records show August 17 was the last day of work for Mr. Foreman and Mr. Speake in the month of August, so Defendant deduces that Plaintiff must have arrived in Oklahoma two days earlier, on August 15.

Mr. Speake testified that after he and Mr. Foreman arrived in Alva on August 12, 2015, they began getting ready and "trying to man the job" by calling welders and checking a list of candidates to take Mr. Banta's welding test. *See* Speake Dep. [Doc. No. 35-6], 21:4;

---

[5] Safety orientation is a prerequisite to working on a pipeline project. *Id*. 48:24-25.

7

21:18-22:3; 23:1-9. Mr. Speake testified he could recall specific dates because he made notes in a "date book" that he kept. *Id*. 23:10-14. His date book had "Fred and Brandon" circled on August 16, 2011, meaning the Grays arrived in Hinton on that date. *Id*. 30:12-25. Mr. Speake also testified that he overheard Mr. Foreman's side of a telephone conversation with Mr. Smith on August 17 in which Mr. Foreman said, "'I need to get these two black boys orientated so I can get them up here.'" *Id*. 36:20-21. According to Mr. Speake, Mr. Foreman then hung up "mad [as] hell" and said, "'He's not going to hire them boys.'" *Id*. 37:1-3. Mr. Foreman then called Mr. Jennings and discussed Mr. Smith's decision; from Mr. Speake's vantage point, the two men agreed that Defendant was "very short-handed" on the Alva project and Mr. Smith was playing the "race card." *Id*. 37:17-38:1. Mr. Foreman then told Mr. Jennings he was quitting, and they did not return to work the next day.

Two days later, after the Grays had left Oklahoma and were returning to Mississippi, Mr. Jennings called Mr. Foreman and said that Defendant had jobs for them. They declined because, according to Plaintiff, "I was terrified. So I said, I'm going to get out of there. If they don't want us there in the first place, there's no need to make it right for us to come back." *See* B. Gray Dep. [Doc. No. 35-5], 98:16-19. In explaining his feelings, Plaintiff referred to racial attitudes and "rebel flags," a reference to an alleged conversation at Mr. Foreman's house in which Mr. Speake talked about the job and mentioned "they [were] out there flying rebel flags on their welding machines." *See id*. 87:15-19; 98:8-15.

Mr. Smith testified, on the other hand, that Mr. Foreman only talked to him one time in his office about hiring the Grays and, at that time, the Alva project was "just kicking off,"

8

the welders to be hired had "busted the test," and there was no need to hire any welder's helpers. *See* Smith Dep. [Doc. No. 35-4], 21:12-21; 26:13-21; 53:17-20. Defendant also presents the affidavit of Curtis Harder, a welder who was promoted to the position of welding boss on the Alva project to replace Mr. Foreman the day after he quit. Mr. Harder states that when he took over, Defendant was "in need of welders, not welder's helpers" and "[t]here was no shortage of welder's helpers during that time period." *See* Harder Aff. [Doc. No. 35-31], ¶¶ 3-4.

Defendant also presents time sheets and employment records, however, that show welders outnumbered welder's helpers on the Alva project by one on August 17 and by two on August 18 and August 19. These records also show that four new welder's helpers began work on August 16, the date on which Plaintiff was first denied employment, according to Mr. Foreman. Further, Plaintiff presents Mr. Foreman's affidavit stating that welders who were testing to work on the project needed welder's helpers to assist them with the testing process, meaning welder's helpers were needed in advance of welders actually starting to work. *See* Foreman Aff. [Doc. No. 55-5], ¶ 3. This fact was supported by the testimony of Mr. Speake that he was asked to help a welder other than Mr. Foreman, Kyle Tignor, so Mr. Tignor could complete the test. *See* Speake Dep. [Doc. No. 55-4], 29:4-24.

**Discussion**

Plaintiff asserts claims of racial discrimination under Title VII and § 1981. Both statutes prohibit adverse employment actions based on an individual's race, and the elements required to prove a claim under either statute are the same. *See Crowe v. ADT Sec. Servs.,*

*Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011); *Carey v. City of Denver*, 534 F. 3d 1269, 1273 (10th Cir. 2008). The parties agree that Plaintiff relies on circumstantial evidence and, therefore, his discrimination claims are governed by the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If Plaintiff establishes a *prima facie* case of discrimination based on race, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. at 802-03. If Defendant provides such a reason, then the burden shifts back to Plaintiff to show that the proffered justification is merely a pretext for unlawful discrimination. *Id*. at 804.

Defendant first asserts that Plaintiff cannot establish a *prima facie* case of racial discrimination in its failure to hire him as a welder's helper for the Alva project. Anticipating that a different conclusion might be reached, Defendant also contends its evidence regarding the number of welders and welder's helpers hired during the relevant time frame shows a nondiscriminatory reason for Mr. Smith's decision not to hire Plaintiff – that is, two more welder's helpers were not needed on the dates Mr. Foreman proposed to hire Plaintiff and his cousin – and Plaintiff cannot establish pretext. To avoid summary judgment under this view, Plaintiff must demonstrate "there is a genuine issue of material fact regarding whether the . . . justification was pretextual." *See Montes v. Vail Clinic, Inc.*, 497 F. 3d 1160, 1173 (10th Cir. 2007) (citing *Young v. Dillon Cos*., 468 F.3d 1243, 1249 (10th Cir. 2006)).

First, "[t]o establish a prima facie case of disparate treatment as a result of the prospective employer's failure to hire, a plaintiff must show that (1) he applied for an available position; (2) he was qualified for the position; and (3) he 'was rejected under

10

circumstances which give rise to an inference of unlawful discrimination.'" *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir. 1999) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. In fact, the Tenth Circuit has described the plaintiff's burden to establish a *prima facie* case as "slight." *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 n.4 (10th Cir. 2013); *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

Viewing all of the facts and evidence presented in the manner required by Rule 56, the Court finds that Plaintiff has sufficiently met his burden to establish a *prima facie case* of racial discrimination. Defendant's argument to the contrary relies on discrepancies among the witnesses' testimony concerning when the Grays arrived in Oklahoma and how many welders were employed to work on particular days. The Court understands Defendant's argument as a challenge to the first and third elements of a *prima facie* case, that is, whether there was an available position for a welder's helper when Mr. Foreman tried to hire Plaintiff and whether Plaintiff was rejected under circumstances giving rise to an inference of racial discrimination. Mr. Foreman's testimony and Defendant's records support an inference that there was a need for an additional welder's helper on the Alva project when Mr. Smith refused to hire Plaintiff,[6] and viewing the circumstances surrounding Mr. Smith's veto of

---

[6] Defendant assumes in its argument that two available positions for welder's helpers were required, but Defendant provides no explanation for treating the Grays as a unit and no reason why one could not have been offered a job if only one was needed. Further, the testimony of Mr. Foreman and Mr. Speake pinpoint the final refusal to hire as occurring August 17, which was their last day of work. The date that the Grays would have received orientation and started work, but for Mr. Smith's decision, was August 18, a date on which the project was short at least two welder's helpers.

11

Mr. Foreman's hiring decision in the light most favorable to Plaintiff, they suggest Plaintiff's race played a part in the adverse action.

To establish that a proffered reason is a pretext for discrimination, a plaintiff can show the reason is "'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'" *Montes v. Vail Clinic, Inc.*, 497 F. 3d 1160, 1173 (10th Cir. 2007) (quoting *Young*, 468 F. 3d at 1249). However, "[e]vidence of pretext may take any number of forms, including evidence the plaintiff was treated differently from other similarly-situated employees . . . ." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014) (internal quotation omitted).

Viewing all of the facts and evidence presented by Plaintiff in the light most favorable to him, as required by Rule 56, the Court finds that Plaintiff has made a minimally sufficient showing to permit a reasonable finding of disparate treatment based on race in Mr. Smith's decision not to hire Plaintiff. In addition to disputed facts between Mr. Foreman's and Mr. Smith's accounts of events and disputed testimony regarding the need to hire welder's helpers for the Alva project, it is undisputed that: 1) there were fewer welder's helpers than welders on August 17 and 18, when Mr. Smith unequivocally refused to hire Plaintiff; 2) both Mr. Foreman and Mr. Speake testified that welder's helpers were needed not only to assist welders who had passed the inspector's test and begun working, but to help those undergoing testing; and 3) within two days after Mr. Smith's refusal, Defendant offered jobs to the Grays as welder's helpers on the Alva project, even though no more welders had been qualified or had started to work on the project. All of these facts undermine Defendant's

stated reason for refusing Mr. Foreman's request to hire Plaintiff and suggest Defendant's justification is pretextual. Accordingly, with respect to Plaintiff's allegation of racial discrimination in his non-selection as a welder's helper on the Alva project, the Court finds that a genuine dispute of material facts precludes summary judgment on Plaintiff's discrimination claims.

## Conclusion

For these reasons, the Court finds that genuine disputes of material facts exist as to Plaintiff's Title VII and § 1981 claims, and Defendant is not entitled to summary judgment on either claim.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 35] is DENIED.

IT SO ORDERED this 25th day of September, 2015.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE